In the Matter of Disciplinary Proceedings
Against Benjamin J. HARRIS, Attorney at Law:

OFFICE OF LAWYER REGULATION,
Complainant-Respondent,

v.

Benjamin J. HARRIS, Respondent-Appellant.

Supreme Court

*No. 2011AP478–D. Submitted on briefs September 21, 2012.
—Decided January 23, 2013.*

2013 WI 8

(Also reported in 825 N.W.2d 285.)

239

For the respondent-appellant, there were briefs filed by *Benjamin J. Harris, Monte E. Weiss,* and *Charles W. Kramer* and *Deutch & Weiss, LLC,* Milwaukee.

For the Office of Lawyer Regulation, there was a brief filed by *Robert G. Krohn* and *Roethe, Pope, Roethe, LLP,* Edgerton.

¶ 1. PER CURIAM. Attorney Benjamin J. Harris has appealed from a referee's report concluding that he engaged in professional misconduct and recommending that his license to practice law in Wisconsin be suspended for six months.

¶ 2. We conclude that the referee's findings of fact are supported by satisfactory and convincing evidence. We further conclude that a five-month suspension is an appropriate sanction for Attorney Harris's misconduct. We also agree with the referee's recommendation that Attorney Harris should be required to continue counseling for his depression, and we conclude that the full costs of the proceeding, which were $19,293.88 as of October 3, 2012, should be assessed against Attorney Harris.

¶ 3. Attorney Harris was admitted to practice law in Wisconsin in 1996 and practices in Milwaukee. He has been previously disciplined on three prior occasions. In 2007 he received a private reprimand in two client matters involving failure to act with reasonable diligence and promptness and failure to keep a client reasonably informed about the status of a matter and comply with requests for information. In 2008 he was issued a public reprimand in three client matters for failing to act with reasonable diligence and promptness

241

in representing a client; entering into a business transaction with a client or knowingly acquiring a pecuniary interest adverse to a client; failing to keep a client informed about the status of a matter and comply with requests for information; and failing to take reasonable steps to protect a client's interests upon termination of representation. In 2010 Attorney Harris's license was suspended for 60 days for failure to keep a client informed as to the status of a matter and failing to keep a client informed and respond to a client's request for information. *In re Disciplinary Proceedings Against Harris,* 2010 WI 9, 322 Wis. 2d 364, 778 N.W.2d 154.

¶ 4. On March 4, 2011, the Office of Lawyer Regulation (OLR) filed a complaint alleging 14 counts of misconduct. Counts One and Two involved Attorney Harris's representation of N.D. in a divorce action filed in June of 2008 in Milwaukee County. The parties signed a marital settlement agreement and obtained a judgment of divorce on March 6, 2009. As attorney for the petitioner, Attorney Harris was to complete the findings of fact, conclusions of law and judgment of divorce and file them with the court.

¶ 5. Following the divorce, N.D. needed to refinance her house to remove her spouse's name from the title and pay him an initial settlement of $30,000. In order to do this, she needed Attorney Harris to complete a Qualified Domestic Relations Order (QDRO) in order to move $23,527 from one of her retirement funds to her ex-spouse's retirement fund. N.D. applied for a mortgage and locked in an interest rate giving her until May 17, 2009, before that interest rate expired. If she did not close by that date, she would have to set up a new loan and pay additional loan origination fees.

¶ 6. N.D. e-mailed Attorney Harris on March 26, 2009, informing him of the refinancing and asking what

it would take to prepare the necessary documents. In April, May, and June, 2009, N.D. e-mailed and telephoned Attorney Harris numerous times inquiring about the status of his preparation of the QDRO and findings. On April 2 Attorney Harris sent opposing counsel the findings. They were returned to him the next day.

¶ 7. Attorney Harris did not respond to N.D.'s numerous e-mails and phone calls until May 11, 2009, when he asked her about information regarding the loan. The information was sent to Attorney Harris on May 12. N.D. again reminded Attorney Harris she could not close until he supplied the needed information regarding the QDRO and the findings. Attorney Harris did not file the findings with the court until June 11, 2009.

¶ 8. N.D. hired successor counsel on June 24, 2009, to help her complete the QDRO. She had to pay a new loan origination fee, had to pay successor counsel to finish the work Attorney Harris started, and had to pay additional interest because she failed to meet the deadline for refinancing. The OLR's complaint alleged the following counts of misconduct with respect to Attorney Harris's representation of N.D.:

> COUNT ONE: By failing to timely file a Findings of Fact, Conclusions of Law, and Judgment of Divorce in [N.D.'s] divorce matter and by failing to promptly prepare the Qualified Domestic Relations Order on her behalf, despite his client's numerous requests and despite the fact that he was informed that time was of the essence, Harris violated SCR 20:1.3.[1]

> COUNT TWO: By failing to respond to [N.D.'s]

---

[1] SCR 20:1.3 states "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

numerous emails and telephone calls regarding the status of the drafting and filing Findings and the Qualified Domestic Relations Order, Harris violated SCR 20:1.4(a)(3).[2]

¶ 9. Attorney Harris stipulated that he violated SCR 20:1.3 by failing to timely prepare the QDRO.

¶ 10. Counts Three, Four, and Five of the complaint arose out of Attorney Harris's representation of P.B. P.B. hired Attorney Harris on August 31, 2006, and paid him $1,000 to handle the estate of P.B.'s late mother, M.B., who had passed away on July 15, 2006. In July of 2008 Attorney Harris provided P.B. with consent forms for each of M.B.'s six children to sign. P.B. obtained the signatures and returned the completed waiver forms to Attorney Harris. Attorney Harris prepared a draft Application for Informal Administration of M.B.'s estate, but the document was never filed.

¶ 11. In February 2009 Attorney Harris set up a meeting at his office with all six of M.B.'s children, but he failed to show up. In October 2009 P.B. called Attorney Harris to check on the status of the case. Attorney Harris said he would send out a status letter, but no letter was ever sent.

¶ 12. As previously noted, Attorney Harris's license to practice law was suspended for 60 days, effective March 8, 2010. Attorney Harris never notified P.B. of the suspension, nor did he advise P.B. to seek representation elsewhere. In September 2010 Attorney Harris provided P.B. a full refund of $1,000. The OLR's complaint alleged the following counts of misconduct with respect to Attorney Harris's representation of P.B.:

---

[2] SCR 20:1.4(a)(3) states a lawyer shall "keep the client reasonably informed about the status of the matter; . . . ."

COUNT THREE: By failing to timely advance the matter of M.B.'s estate, including by failing to ever file an application for informal probate, Harris violated SCR 20:1.3.

COUNT FOUR: By failing to respond to P.B.'s numerous telephonic requests for a status update on the M.B. estate, Harris violated SCR 20:1.4(a)(4).[3]

COUNT FIVE: By failing to notify P.B. of his license suspension and/or advise him to seek legal advice elsewhere, Harris violated SCR 22.26(1)(a) and (b).[4]

¶ 13. Attorney Harris subsequently stipulated to all three counts of misconduct.

¶ 14. Counts Six, Seven, Eight, and Nine of the complaint arose out of Attorney Harris's representation of J.K. A judgment in the amount of $562,000 was entered against J.K. and her husband, D.K., in Waukesha County following a jury trial. J.K. and her husband had been represented in that case by Attorney Jeremy Przybyla. After the trial, Mr. and Mrs. K. hired Attorney Harris. Attorney Harris filed an appeal which resulted in a portion of the verdict being overturned

---

[3] SCR 20:1.4(a)(4) provides that a lawyer shall "promptly comply with reasonable requests by the client for information; . . . ."

[4] SCR 22.26(1)(a) and (b) states as follows:

(1) On or before the effective date of license suspension or revocation, an attorney whose license is suspended or revoked shall do all of the following:

(a) Notify by certified mail all clients being represented in pending matters of the suspension or revocation and of the attorney's consequent inability to act as an attorney following the effective date of the suspension or revocation.

(b) Advise the clients to seek legal advice of their choice elsewhere.

and the matter being re-tried. After re-trial, a judgment of $412,000 was entered against Mr. and Mrs. K.

¶ 15. During Attorney Harris's representation, his firm was hired by Mr. and Mrs. K. to represent them in a legal malpractice case against Attorney Przybyla. Mr. and Mrs. K. and Attorney Harris initially believed the malpractice case should be placed on hold pending a resolution of the Waukesha County judgment entered against Mr. and Mrs. K.

¶ 16. On March 1, 2007, Attorney Harris filed a summons and complaint on behalf of J.K. against Attorney Przybyla in Ozaukee County. In December of 2007, a motion to dismiss was filed by Przybyla. Attorney Harris was aware of the pending motion to dismiss and made the unilateral decision not to oppose it. His strategy was to allow dismissal of the malpractice suit under the theory that it would allow him to better be able to resolve the Waukesha County judgment. The case against Attorney Przybyla was dismissed on March 12, 2008.

¶ 17. Prior to the dismissal, Attorney Harris did not tell J.K. about his strategy and the potential dismissal of her legal malpractice case. Attorney Harris testified at the hearing before the referee that he did not tell J.K. about the motion to dismiss so that she would have an easier time reopening the case based on the fact she had no personal knowledge of the motion to dismiss.

¶ 18. J.K. discovered her legal malpractice suit had been dismissed in November of 2008. Attorney Harris said he permitted dismissal of the case in an effort to obtain leverage in his negotiations on the outstanding money judgment and to conceal the existence of a possible malpractice claim from a creditor. J.K. hired another attorney to represent her in April of

2009. That attorney moved to reopen the malpractice suit on May 1, 2009, more than one year after the dismissal. The motion was denied. The OLR's complaint alleged the following counts of misconduct with respect to Attorney Harris's representation of J.K.:

COUNT SIX: By failing to consult with [J.K.] and instead unilaterally deciding not to prosecute [J.K.'s] legal malpractice claim, knowing this would result in a waiver of the claim, and by failing to know or learn the appropriate statute of limitations, Harris violated SCR 20:1.1.[5]

COUNT SEVEN: By failing to consult with [J.K.] concerning the method and means of pursuing her claims and by failing to discuss with [J.K.] the potential dismissal of the legal malpractice claim in order to proceed with resolution of a judgment against her, Harris violated SCR 20:1.2(a).[6]

COUNT EIGHT: By failing to discuss and reveal his strategy with [J.K.], which included allowing a legal malpractice claim to be dismissed under the theory it

---

[5] SCR 20:1.1 states, "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

[6] SCR 20:1.2(a) provides as follows:

Subject to pars. (c) and (d), a lawyer shall abide by a client's decisions concerning the objectives of representation and, as required by SCR 20:1.4, shall consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation. A lawyer shall abide by a client's decision whether to settle a matter. In a criminal case or any proceeding that could result in deprivation of liberty, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.

would allow him to better be able to resolve a judgment against his client, Harris violated SCR 20:1.4(a)(2)[7] and (3).

COUNT NINE:   By failing to advise [J.K.] about the dismissal of the legal malpractice case, by advising [J.K.] that the action was pending after he knew it had been dismissed, and by intentionally allowing the dismissal to occur in order to mislead a creditor of his clients and gain advantage for his clients, Harris violated SCR 20:8.4(c).[8]

¶ 19.   Counts Ten and Eleven of the complaint arose out of Attorney Harris's representation of M.B. In September of 2008, M.B. hired Attorney Harris to represent her in a divorce. She paid him an advance fee of $700. Attorney Harris filed the petition for divorce on October 15, 2008. Around the time the divorce was filed, M.B. moved to New York State.

¶ 20.   M.B. spoke with Attorney Harris in October and November 2008 and again in January and February 2009. Attorney Harris told her the court would issue the divorce on February 18, 2009.

¶ 21.   Attorney Harris claims he received a voice message on his answering machine, from a woman who sounded like M.B., asking him to dismiss the divorce action. Based on this voice message, he let the divorce action be dismissed. In fact, M.B. did not leave any such message. Attorney Harris took no action to communicate directly with M.B. to confirm her wish to dismiss

---

[7] SCR 20:1.4(a)(2) provides that a lawyer shall "reasonably consult with the client about the means by which the client's objectives are to be accomplished; . . . ."

[8] SCR 20:8.4(c) states it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation; . . . ."

her divorce case, and once the action had been dismissed, he did not advise her of that fact.

¶ 22. M.B. had believed her divorce would be finalized on February 18, 2009. Beginning in February 2009 she left numerous messages for Attorney Harris, but he never returned her calls. She filed a grievance against him in July 2009.

¶ 23. On September 8, 2009, the OLR sent Attorney Harris an investigative letter with regard to M.B.'s grievance and requested him to respond by October 2. Attorney Harris failed to respond. The OLR sent a second letter on October 5, requesting a response by October 15. Attorney Harris again failed to respond. On October 26, 2009, Attorney Harris sent the OLR a letter purportedly responding to M.B.'s grievance, but he failed to respond to several enumerated questions.

¶ 24. On October 29, 2009, the OLR sent Attorney Harris another letter advising that more specific responses were required by November 12. Attorney Harris sent several letters indicating a date by which he would respond, but no response was ever sent. On January 9, 2010, the OLR filed a motion with this court seeking a suspension of Attorney Harris's license for failure to cooperate in an OLR investigation. This court issued an order to show cause. Attorney Harris then sent the OLR letters responsive to its earlier inquiries and document requests, and the OLR withdrew its request for a suspension of Attorney Harris's license.

¶ 25. The OLR's complaint alleged:

> COUNT TEN: By failing to contact [M.B.] between February 2009 and August 2009 regarding the dismissal of her divorce case and by failing to respond to [M.B.'s] numerous telephone calls seeking the status of the divorce case, Harris violated SCRs 20:1.4(a)(3) and (4).

249

COUNT ELEVEN: By failing to respond timely to OLR's multiple written requests for information regarding this investigation, Harris violated SCR 22.03(2) and 22.03(6),[9] enforceable via SCR 20:8.4(h).[10]

¶ 26. Counts Twelve, Thirteen, and Fourteen arose out of Attorney Harris's representation of J.H. J.H. and her husband, S.H., filed a joint petition for divorce in January of 2006. Attorney Harris did not represent either party. Mr. and Mrs. H. sought to end their marriage by way of a collaborative divorce.

¶ 27. Mr. and Mrs. H. owned a marital residence in Erin, Wisconsin. Prospective buyers failed to close on the purchase of the property. S.H. wanted to pursue

---

[9] SCRs 22.03(2) and (6) state as follows:

(2) Upon commencing an investigation, the director shall notify the respondent of the matter being investigated unless in the opinion of the director the investigation of the matter requires otherwise. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct within 20 days after being served by ordinary mail a request for a written response. The director may allow additional time to respond. Following receipt of the response, the director may conduct further investigation and may compel the respondent to answer questions, furnish documents, and present any information deemed relevant to the investigation.

. . .

(6) In the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance.

[10] SCR 20:8.4(h) states it is professional misconduct for a lawyer to "fail to cooperate in the investigation of a grievance filed with the office of lawyer regulation as required by SCR 21.15(4), SCR 22.001(9)(b), SCR 22.03(2), SCR 22.03(6), or SCR 22.04(1); . . . ."

litigation for breach of contract. J.H. did not want to do so since she had moved out of state and did not want to have to return to Wisconsin for the litigation. She also did not want to be responsible for the cost of the litigation.

¶ 28. S.H. met with Attorney Harris about the property claim. S.H. told Attorney Harris that he and J.H. had reached an understanding whereby S.H. could commence the breach of contract litigation as long as he was solely responsible for all costs and J.H. would not have to return to Wisconsin. Attorney Harris believed S.H. had authority from J.H. to begin the litigation. On April 23, 2008, without contacting either J.H. or her divorce attorney, and without contacting S.H.'s divorce attorney, Attorney Harris filed suit against the prospective buyers. The complaint named the plaintiffs as "S. and J. H.," and Attorney Harris signed the complaint as "Attorneys for Plaintiffs." He initially did not send J.H. a copy of the summons and complaint or any other documents. Attorney Harris believed S.H. was keeping J.H. advised of the progress of the case.

¶ 29. On or about August 29, 2008, J.H.'s divorce attorney learned of the suit online through CCAP. She contacted Attorney Harris and told him J.H. had no knowledge of the lawsuit and was unwilling to participate in it. J.H. and S.H. were divorced on September 26, 2008. As part of the divorce judgment, J.H. agreed and was ordered to cooperate in the pending breach of contract suit as long as the litigation was financed entirely by S.H. Despite the divorce agreement, J.H. filed a grievance against Attorney Harris claiming she had not given him authority to file the litigation. The civil litigation was ultimately settled through mediation in April 2009.

¶ 30.  The OLR's complaint alleged the following counts of misconduct with respect to the J.H. and S.H. matter:

COUNT TWELVE:  By failing to advise [J.H.] that he had filed a lawsuit on her behalf as her attorney and by failing to consult with her regarding the nature of the lawsuit, its objectives, and the status of the case, Harris violated SCR 20:1.2(a), SCR 20:1.4(a), and SCR 20:1.4(b).[11]

COUNT THIRTEEN:  By naming [J.H.] as plaintiff and by falsely representing to the Court in the case that he was the attorney representing [J.H.] when she had never met him and she had never agreed to such representation, Harris violated SCR 20:3.3(a)(1)[12] and SCR 20:8.4(c).

---

[11] SCRs 20:1.4(a) and (b) state:

A lawyer shall:

(1) Promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in SCR 20:1.0(f), is required by these rules;

(2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;

(3) keep the client reasonably informed about the status of the matter;

(4) promptly comply with reasonable requests by the client for information; and

(5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

[12] SCR 20:3.3(a)(1) provides that a lawyer shall not knowingly "make a false statement of fact or law to a tribunal or fail

COUNT FOURTEEN: By naming [J.H.] as plaintiff and by falsely representing to the opposing party in the case that he was the attorney representing [J.H.] when he had never met her and she had never agreed to such representation, Harris violated SCR 20:4.1(a)[13] and SCR 20:8.4(c).

¶ 31. Attorney Harris filed an answer to the complaint on April 19, 2011. James Winiarski was appointed referee. A hearing was held before the referee on February 20 and 21, 2012. The referee issued his report and recommendation on May 11, 2012. The referee found that the OLR had met its burden of proof as to Counts One through Five (the N.D. and P.B. matters). The referee found the OLR failed to meet its burden of proof as to Count Six (the first count alleged with respect to Attorney Harris's representation of J.K.). The referee further found the OLR did meet its burden of proof with respect to Counts Seven through Nine (the remainder of the J.K. counts) and Ten and Eleven (the counts arising out of the M.B. matter). The referee found the OLR failed to meet its burden of proof with respect to Counts Twelve through Fourteen (all arising out of the J.H. matter).

¶ 32. With respect to the appropriate discipline, the referee noted that the OLR proved ten out of the 14

to correct a false statement of material fact or law previously made to the tribunal by the lawyer; . . . ."

[13] SCR 20:4.1(a) states as follows:

In the course of representing a client a lawyer shall not knowingly:

(1) make a false statement of a material fact or law to a 3rd person; or

(2) fail to disclose a material fact to a 3rd person when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client, unless disclosure is prohibited by SCR 20:1.6.

counts charged. The referee said the common thread running through many of the proven counts was lack of diligence and failure to respond to client communications. The referee noted the same problems also existed in Attorney Harris's prior disciplinary cases.

¶ 33.  The referee noted that Attorney Harris asserted both the prior disciplinary cases as well as the counts charged in the instant matter all had their origin in the years 2007 through 2010, a time during which he maintained he was experiencing considerable personal problems. The referee noted that Attorney Harris eventually decided to see a psychologist.

¶ 34.  The psychologist testified at the evidentiary hearing and noted Attorney Harris's use of a "bottom left drawer" in his desk where he would place or hide correspondence and other materials he did not want to deal with in an appropriate fashion. The psychologist testified that with therapy Attorney Harris has recognized the impropriety of that conduct and is now dealing with such issues in a better fashion. The psychologist testified Attorney Harris suffers from depression. However, the psychologist said the depression was not an excuse for professional misconduct.

¶ 35.  The referee said while Attorney Harris had no inappropriate motives, the discipline imposed in this case must discourage Attorney Harris from engaging in similar conduct in the future and must also serve to deter similar misconduct by other attorneys. The referee said he did not doubt Attorney Harris has made progress and has learned from his mistakes, but the potential existed for Attorney Harris to relapse and fall into the same sort of conduct in the future.

¶ 36.  The referee identified as mitigating factors Attorney Harris's acknowledgement of his depression and his need for psychological help; the restructuring of

his office protocols to avoid similar problems in the future; his acknowledgment of some of the misconduct here; and his hardworking and zealous representation of clients as shown in the J.K. matter. The referee identified as aggravating factors Attorney Harris's three prior disciplinary proceedings involving similar misconduct.

¶ 37. The referee noted this court has followed a pattern of progressive discipline. He noted the OLR had sought a one-year suspension while Attorney Harris believed another public reprimand was appropriate. Given the past disciplinary history and the misconduct proven in this case, the referee recommended Attorney Harris be suspended for six months and be required to continue psychological counseling for his depression. The referee recommended that Attorney Harris be responsible for 80 percent of the costs in the case and said, "I do find total costs would not have been much different even if the counts recommended for dismissal had not been charged."

¶ 38. Attorney Harris has appealed. He identifies the following issues:

> 1. Did the Referee err in concluding Attorney Harris violated the Rules of Professional conduct when he failed to reasonably communicate with what he thought was former client after he thought the client had instructed him to dismiss a divorce matter?
>
> 2. Did the Referee err in concluding that Attorney Harris violated the rules of professional conduct by failing to communicate the choice of tactics with [J.K.] when she had given him carte blanche to resolve an outstanding judgment and put another matter on hold until that judgment was resolved?
>
> 3. Did the Referee err in concluding that Attorney Harris violated the rules of professional conduct by

255

misrepresenting the status of a matter when there is no evidence that Attorney Harris ever told client that it was pending when it was not?

4. Did the Referee err in recommending a six month suspension when Attorney Harris has made significant changes to prevent a reoccurrence of past bad conduct, has practiced violation free for two years and his conduct is not as serious as other cases calling for a six month suspension?

¶ 39. Attorney Harris's opening brief on appeal states that he appeals only from the referee's finding of fact contained in paragraph 32 and the referee's conclusions of law with respect to Counts Seven, Eight, Nine (in part), Ten, and Eleven. He also objects to the level of discipline recommended by the referee and continues to believe that a public reprimand would be appropriate.

¶ 40. Finding of fact 32 states, "Harris deliberately led [J.K.] to believe that the action was still pending, after he knew it had been dismissed."

¶ 41. In discussing the J.K. matter, the referee said the evidence shows that Attorney Harris permitted the dismissal of the malpractice case without discussing the dismissal and its consequences with J.K. The referee said the dismissal of the malpractice case and its relation to the judgment previously taken against J.K. and her husband were significant events which required input from Attorney Harris's client.

¶ 42. With respect to the M.B. matter, the referee noted Attorney Harris maintains he received a voice message from M.B. indicating she wanted to drop her divorce action. The referee said, "[T]he reasonable approach to the alleged voice message required confirmation of his client's desire to drop the divorce action."

¶ 43. Attorney Harris argues the referee erred in failing to recommend the dismissal of Count Ten involv-

256

ing the representation of M.B. because Attorney Harris reasonably believed his representation of M.B. had ended. Attorney Harris claims he was the victim of an intentional deception, and because of this he believed his client wanted the divorce case dismissed.

¶ 44.   Attorney Harris also argues that the referee erred in concluding he violated the rules of professional conduct with respect to his representation of J.K. He says the only evidence in the record is that he did consult with J.K. on the method and means of pursuing her malpractice claim. He argues the evidence established that J.K. gave him carte blanche to do what he could to resolve the judgment so long as the malpractice action remained "viable." He asserts the record shows the malpractice action was always viable because the statute of limitations had not run and it could always be re-filed. He says, "The day after the action was dismissed in March of 2008, it was just as viable as the day Attorney Harris filed it."

¶ 45.   Attorney Harris argues there is no showing that J.K. wanted to be apprised of each and every step taken in the malpractice case. He says the only testimony in the record is that J.K. gave him a goal (resolution of the judgment) and directed him to do everything he could to get rid of the judgment. Attorney Harris asserts given that the malpractice action was capable of being pursued even after it was dismissed, there was no harm to J.K. and no violation of supreme court rules.

¶ 46.   Attorney Harris also asserts the referee's recommendation of a six-month suspension is excessive. He says it is important to place his misconduct in a time perspective. He says generally the events at issue in this case occurred from late 2006 or early 2007 to sometime in 2009. He points to a series of unfortunate events

during that time period in both his personal and professional life. He says the onslaught of these problems and pressures exacerbated his personality trait of avoiding problems by placing unopened envelopes that he thought contained bad news into a desk drawer and trying to ignore the problem.

¶ 47. Attorney Harris says he is not the same person now who committed the acts and violated the rules at issue in this case. He says the events in his life that caused him to spiral downward are now over. He says the cases in which he failed to respond to clients in a timely manner (N.D. and P.B.) occurred in 2006 through 2009, the same timeframe as the other disciplinary matters in which he has already been sanctioned. Attorney Harris suggests that if the OLR had presented the N.D. and P.B. cases at the same time as the prior disciplinary matters, all of those matters could have been considered together. He says although he acknowledges the seriousness of his failings, "one can question the fairness of separating out matters that could have been handled together and using the first resolved matter as the basis of 'progressive' discipline."

¶ 48. Attorney Harris asserts that since he was last disciplined in 2010 he has made significant changes in the way he practices law. He says he has not and will not forget the seriousness of his past actions and he says in this electronic age his previous missteps will never be forgotten.

¶ 49. The OLR argues that the referee's findings and conclusions should be upheld in all respects. The OLR says Attorney Harris's defense to the count involving M.B. is based on an unsubstantiated claim that he received an anonymous call from somebody purporting to be M.B. indicating she did not want to proceed with her divorce case. The OLR says the issue turns on the

credibility of Attorney Harris and M.B., and it says the referee's determination of credibility is not to be second guessed by this court. The OLR says the referee chose to believe M.B. when she testified she never left any such message directing the dismissal of her divorce case. The OLR notes Attorney Harris admits he never corroborated the message by contacting M.B. or anyone else on her behalf, nor did he confirm by letter or in any other way that the divorce case should be cancelled. The OLR says there is ample evidence to support the referee's finding of misconduct on Count Ten.

¶ 50.  The OLR goes on to argue that by failing to consult with J.K. about the strategy used pertaining to her legal malpractice claim, Attorney Harris violated SCRs 20:1.2(a) and SCR 20:1.4(a)(2) and (3). The OLR says Attorney Harris made the unilateral decision to allow the malpractice case to be dismissed in order to be in a better bargaining position against J.K.'s judgment creditor. The OLR notes Attorney Harris admits he never told J.K. the malpractice suit had been dismissed. The OLR says even assuming Attorney Harris's strategy for dismissing the legal malpractice claim had some strategic merit (which the OLR terms "very questionable"), he is not relieved of his duty to consult with his client and abide by her decision. Attorney Harris never gave his client the chance to consider alternatives when he placed her malpractice claim in jeopardy without her consent. The OLR says the referee's factual findings leading to the conclusion of violations of Counts Six and Seven are not clearly erroneous.

¶ 51.  The OLR argues that by failing to advise J.K. about the dismissal of her legal malpractice suit and by leading her to believe the case was still pending after he knew it had been dismissed, Attorney Harris violated SCR 20:8.4(c), as alleged in Count Nine of the

complaint. The OLR says Attorney Harris's stated goal was to withhold information from his client in order to preserve some "plausible deniability" on her behalf should she later have to testify about her assets in the money judgment case. The OLR says, "In sum, Harris planned to use his own deceit of his client to conceal the legal malpractice claim from her judgment creditors. None of these claimed strategies were admittedly reviewed with [J.K.]."

¶ 52. The OLR notes that SCR 20:8.4(c) is stated in the disjunctive and prohibits conduct which involves any one of the four acts described: dishonesty, deceit, fraud, or misrepresentation. The OLR says the conduct here best fits the category of misrepresentation which is defined in SCR 20:1.0(h) as "an untruth, either knowingly or with reckless disregard, whether by statement or omission, which if accepted would lead another to believe a condition exists that does not actually exist." The OLR says Attorney Harris's comments to J.K. certainly led her to believe a condition existed that did not actually exist, i.e., that there remained pending a viable legal malpractice claim.

¶ 53. As to the appropriate sanction, the OLR says Attorney Harris's multiple rule violations and disciplinary history warrant a six-month suspension. The OLR says there are many aggravating circumstances in this case, the most dramatic of which is Attorney Harris's prior disciplinary history, including the same rule violations with respect to other clients.

¶ 54. The OLR says Attorney Harris appears to argue that if all of his past disciplinary violations had been bundled together into one case, he would have received a lighter sanction. The OLR says it processes disciplinary matters in the sequence in which they are filed, and it says it is "rank speculation to presume a

sanction would be any different had the sequencing of disciplinary prosecutions been any different."

¶ 55.    A referee's findings of fact will not be set aside unless clearly erroneous. Conclusions of law are reviewed de novo. *See In re Disciplinary Proceedings Against Eisenberg,* 2004 WI 14, ¶ 5, 269 Wis. 2d 43, 675 N.W.2d 747. This court is free to impose whatever discipline it deems appropriate, regardless of the referee's recommendation. *See In re Disciplinary Proceedings Against Widule,* 2003 WI 34, ¶ 44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶ 56.    After careful review of the record and having had the benefit of briefs and oral arguments by the parties, we conclude that the record supports all of the referee's findings of fact, including finding of fact 32. We also agree with all of the referee's conclusions of law which flow from the findings of fact.

¶ 57.    We specifically agree with the referee that the reasonable approach to the alleged voicemail message left by M.B. required that Attorney Harris confirm his client's desire to drop the divorce action. We also specifically agree with the referee that Attorney Harris had a duty to disclose and discuss with J.K. his strategy regarding her legal malpractice suit, and we agree with the referee that no reasonable attorney would assume that she or he had the authority to dismiss a pending malpractice case without first discussing that strategy with his or her client. Although it may be true that Attorney Harris never explicitly told J.K. that the malpractice suit was still "pending" after he allowed it to be dismissed, he admits that he told J.K. the mal-

261

practice action remained "viable." We conclude that Attorney Harris's comments to J.K. that her malpractice suit remained "viable" after he knew it had been dismissed constituted a misrepresentation within the meaning of SCR 20:8.4(c).

¶ 58. Turning to the appropriate sanction, the referee is correct that we generally adhere to a pattern of progressive discipline. Attorney Harris's disciplinary history consists of a private reprimand, a public reprimand, and a 60–day suspension. After careful consideration, we conclude that the appropriate level of discipline is a five-month suspension of Attorney Harris's license to practice law.

¶ 59. We note that all of the client matters at issue here had their genesis in the 2007–2009 timeframe, which is the same time period at issue in the matters that led to Attorney Harris's suspension in 2010. Attorney Harris has stated that since that time, he has made substantial progress in handling the way he practices law. He now shares office space with a well-respected local attorney and consults with him on various cases. That attorney serves as Attorney Harris's mentor. Attorney Harris has downsized his practice, prioritizes his existing clients over attempting to obtain new ones, and no longer puts anything in his lower left-hand desk drawer. Attorney Harris's psychologist has confirmed these positive changes.

¶ 60. There is no way of knowing what sanction would have been imposed in the event all of the counts at issue in this matter had been brought in conjunction with the counts contained in the complaint that led to Attorney Harris's 60–day suspension in 2010. The counts of misconduct at issue in this case are serious failings. Nevertheless, we deem it appropriate to impose

a five-month suspension, whereby Attorney Harris will be able to be reinstated by affidavit, *see* SCR 22.28(2), rather than a six-month suspension which would necessitate a full reinstatement proceeding, *see* SCRs 22.29–22.33, and would increase the actual time Attorney Harris was without a license to practice law.

¶ 61. We agree with the referee that Attorney Harris should be required to continue psychological counseling for his depression. We also deem it appropriate to assess Attorney Harris the full costs of the proceeding. Supreme court rule 22.24(1m) provides that the court's general policy is that upon a finding of misconduct it is appropriate to impose all costs upon the respondent. In cases involving extraordinary circumstances, the court may, in the exercise of its discretion, reduce the amount of costs. We find no extraordinary circumstances in this case that would warrant a deviation from the court's general policy. Indeed, the referee commented that the total costs would not have been much different even if the counts on which the referee found the OLR did not meet its burden of proof had not been charged.

¶ 62. IT IS ORDERED that the license of Benjamin J. Harris to practice law in Wisconsin is suspended for a period of five months, effective February 25, 2013.

¶ 63. IT IS FURTHER ORDERED that for a period of two years from the date of this order, Benjamin J. Harris shall participate in psychological counseling for his depression and shall submit quarterly reports from his psychologist to the Office of Lawyer Regulation.

¶ 64. IT IS FURTHER ORDERED that within 60 days of the date of this order, Benjamin J. Harris shall pay to the Office of Lawyer Regulation the costs of this proceeding.

263

¶ 65. IT IS FURTHER ORDERED that compliance with all conditions of this order is required for reinstatement. *See* SCR 22.28(2).