# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2020AP1082-D |

| | |
|---|---|
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Benjamin J. Harris, Attorney at Law:<br><br>Office of Lawyer Regulation,<br>　　　　Complainant,<br>　　v.<br>Benjamin J. Harris,<br>　　　　Respondent. |

DISCIPLINARY PROCEEDINGS AGAINST HARRIS

| | |
|---|---|
| OPINION FILED: | April 6, 2021 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| 　COURT: | |
| 　COUNTY: | |
| 　JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
| Per Curiam. | |
| NOT PARTICIPATING: | |

| | |
|---|---|
| ATTORNEYS: | |

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.  2020AP1082-D

STATE OF WISCONSIN           :        IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against Benjamin J. Harris, Attorney at Law:**

**Office of Lawyer Regulation,**

      **Complainant,**

  **v.**

**Benjamin J. Harris,**

      **Respondent.**

**FILED**

**APR 6, 2021**

Sheila T. Reiff
Clerk of Supreme Court

ATTORNEY disciplinary proceeding.  *Attorney's license suspended.*

¶1  PER CURIAM.  We review the report of the referee, the Honorable Jeffrey A. Kremers, which recommends that the court suspend Attorney Benjamin J. Harris' license to practice law in Wisconsin for 60 days and order him to pay the full costs of this disciplinary proceeding, which are $1,616.83 as of February 8, 2021.  Prior to the referee issuing his report, Attorney Harris and the Office of Lawyer Regulation (OLR) entered into a stipulation in which Attorney Harris pled no contest to the four counts of misconduct alleged in the OLR's

complaint. Since neither party has appealed from the referee's report and recommendation, our review proceeds under Supreme Court Rule (SCR) 22.17(2).

¶2 Upon our independent review, we adopt the referee's findings of fact and conclusions of law with respect to Attorney Harris' misconduct. We agree that the misconduct warrants a 60-day suspension of Attorney Harris' license to practice law in Wisconsin. The OLR did not seek restitution, and we do not order restitution. As is our usual custom, we order Attorney Harris to pay the full costs of this disciplinary proceeding.

¶3 Attorney Harris was admitted to practice law in Wisconsin in 1996 and practices in the Milwaukee area. He has been previously disciplined on five prior occasions. In 2007, he was privately reprimanded for failing to pursue the resolution of a debt collection matter; failing to keep a client informed of the status of the debt collection matter; failing to proceed with a landlord matter or file a claim on behalf of his client for one year; and failing to keep a client informed of the status of that matter. Private Reprimand No. 07-04 (electronic copy available at https://compendium.wicourts.gov/app/raw/001931.html). In 2008, Attorney Harris was publicly reprimanded for misconduct consisting of entering into a land contract with a client without written consent; failing to respond to a motion to amend a complaint and failing to attend the motion hearing; failing to inform his client of the status of the case and respond to the client's request for information; failing to timely act in furtherance of a resolution of a

2

client's equalization payment; failing to respond to the client's telephone calls or notify the client of a proposed stipulation and order in an upcoming hearing; and failing to promptly return the client's file to him or successor counsel. Public Reprimand of Benjamin J. Harris, No. 2008-03 (electronic copy available at https://compendium.wicourts.gov/app/raw/002029.html).

¶4   In 2010, Attorney Harris' license was suspended for 60 days for misconduct consisting of failing to keep a client informed of the status of litigation; failing to attend a damages hearing and a motion hearing; failing to notify the client of the status of the case; failing to notify the client of the dismissal of the appeal; and failing to advise the client of an order granting a motion to enforce a judgment. In re Disciplinary Proceedings Against Harris, 2010 WI 9, 322 Wis. 2d 364, 778 N.W.2d 154.

¶5   In 2012, Attorney Harris was privately reprimanded for failing to have a written fee agreement and depositing a client's unearned advanced fee payment directly into his business account. Private Reprimand No. 2012-20 (electronic copy available at https://compendium.wicourts.gov/app/raw/002515.html).

¶6   In 2013, Attorney Harris' license was suspended for five months for misconduct consisting of failing to timely file a judgment of divorce and promptly prepare a QDRO; failing to respond to a client's emails and telephone calls; failing to notify a client of his license suspension; failing to consult

3

with a client regarding the method and means of pursing the client's claim; failing to advise a client of the dismissal of a case; and failing to respond in a timely fashion to the OLR's written request for information. In re Disciplinary Proceedings Against Harris, 2013 WI 8, 345 Wis. 2d 239, 825 N.W.2d 285.

¶7 On June 25, 2020, the OLR filed a complaint against Attorney Harris alleging four counts of misconduct arising out of two client matters. The first client matter involved Attorney Harris' representation of T.P. Attorney Harris was retained to defend T.P. in three lawsuits. Attorney Harris' conduct in two of those matters formed the basis for the misconduct charged in the OLR's complaint.

¶8 On December 14, 2017, T.P. retained Attorney Harris to defend him and a company he owned and operated in a small claims lawsuit that involved claims of breach of contract and unjust enrichment, initiated by Ramos Drywall, LLC. T.P. had hired Ramos Drywall as a subcontractor on a project, and Ramos Drywall claimed it had not been paid.

¶9 The initial return date for the small claims case was set for December 18, 2017. A small claims publication summons and notice in the case provided that defendants may have the option of filing an answer before the court date to avoid the necessity of a personal appearance on December 18, 2017. On December 14, 2017, Attorney Harris filed an answer and affirmative defenses, but he did not confirm that his filing obviated the need to personally appear on December 18, 2017. Attorney Harris did not personally appear on that date.

4

¶10 On December 18, 2017, a default judgment was entered against T.P. for $2,200 based on Attorney Harris' failure to personally appear. T.P. learned of the entry of default judgment in late December 2017 when he checked Wisconsin Circuit Court Access. He notified Attorney Harris that a default judgment had been entered.

¶11 On January 24 and 31, 2018, T.P. messaged Attorney Harris asking for a response; asking for the case status; expressing his frustration at the lack of communication; and saying he felt Attorney Harris was "blowing me off." On February 7, 2018, T.P. sent Attorney Harris an email saying he had not heard from the attorney and that he had emailed and texted about ten times trying to get a response.

¶12 On February 14, 2018, T.P. emailed Attorney Harris again asking about the case status. On February 20, 2018, Attorney Harris filed a motion to reopen the case. On February 27, 2018, T.P. sent Attorney Harris another message saying, "Can you let me know. I've been emailing and waiting patiently for weeks now!!!!!"

¶13 On June 12, 2018, Attorney Harris' motion to reopen the small claims case was granted. Over the next 18 months, the case was adjourned several times, and pleadings were amended. An evidentiary hearing was ultimately held on December 3, 2019, and judgment was granted in favor of the plaintiffs in the amount of $900. Attorney Harris continued to represent T.P. in the case until its conclusion.

5

¶14 On February 20, 2018, T.P. retained Attorney Harris to defend him and his company in a small claims lawsuit claiming breach of contract and unjust enrichment. The case was initiated by PM Construction and Restoration, LLC. Again, T.P. had hired PM Construction as a subcontractor on a project.

¶15 On March 8, 2018, Attorney Harris filed an answer and affirmative defenses. Mandatory mediation was scheduled for April 9, 2018. The mediation notice warned, "Any cancelling or rescheduling of mediation for any reason will be at the discretion of the Mediation Center and will result in an additional fee."

¶16 Attorney Harris alleges that he left a voice mail message for the Mediation Center at the end of March 2018 saying he had a conflict with the April 9, 2018 date. Attorney Harris did not confirm that the mediation would be rescheduled nor did he inform opposing counsel of his alleged request to reschedule. Mediation Center files contain no note or other indication that it received a phone message from Attorney Harris.

¶17 Neither Attorney Harris nor T.P. appeared for mediation on April 9, 2018, although the other parties did appear. On April 10, 2018, a small claims disposition notice was filed by the Mediation Center, indicating the defendant had failed to appear for the scheduled mediation. The court commissioner reviewed the notice the same day, and on April 12, 2018, a default judgment was entered in favor of the plaintiffs.

¶18 On April 13, 2018, T.P. emailed Attorney Harris informing him of the default judgment and saying, "What is going

on with you?  I have asked for you to represent us and respond to my emails.  Why are you ignoring me and not taking care of defending us."  Attorney Harris responded by saying he would work on it "this weekend."

¶19  On April 27, 2018, T.P. emailed Attorney Harris again, complaining that Attorney Harris had not responded and questioning what Attorney Harris was going to do to "rectify the issues."  On April 30, 2018, two and a half weeks after the default judgment had been entered, Attorney Harris filed a motion to reopen the judgment.  Over the objection of opposing counsel, the motion was granted on June 4, 2018.  The case was ultimately settled in mediation, and an order for dismissal was entered on October 2, 2019.

¶20  The OLR's complaint alleged the following counts of misconduct with respect to Attorney Harris' representation of T.P.:

> **Count 1:**  By failing to respond to multiple email and text messages from T.P. requesting information in the Ramos Drywall and PM Construction cases, Attorney Harris violated SCR 20:1.4(a)(4).[1]
>
> **Count 2:**  By failing to file a motion to reopen a default judgment until February 20, 2018, in the Ramos Drywall case, and failing to appear for mandatory mediation on April 9, 2018, or failing to confirm that mediation would be rescheduled, resulting in a default judgment in the PM Construction case, Attorney Harris, in each instance violated SCR 20:1.3.[2]

[1] SCR 20:1.4(a)(4) provides:  "A lawyer shall promptly comply with reasonable requests by the client for information."

[2] SCR 20:1.3 provides:  "A lawyer shall act with reasonable diligence and promptness in representing a client."

¶21 The other client matter detailed in the OLR's complaint involved Attorney Harris' representation of J.H., who retained Attorney Harris to file a lawsuit on his behalf against two former partners who had formed HSL Holdings, LLC, to own and operate a tavern in Milwaukee.

¶22 On September 23, 2013, Attorney Harris filed a summons and complaint for breach of contract and unjust enrichment. The defendants filed a motion to dismiss based on errors or omissions in the complaint. At a February 19, 2014 scheduling conference, the court gave Attorney Harris 30 days to amend the complaint. A calendar call was scheduled for April 18, 2014.

¶23 On April 18, 2014, the court contacted Attorney Harris for a status update. A second calendar call was scheduled for June 13, 2014, since an amended complaint had not yet been filed.

¶24 On June 13, 2014, the court unsuccessfully tried to reach Attorney Harris to see if the amended complaint would be filed. The court set a third calendar call for June 23, 2014. On that date, Attorney Harris could not be reached. The court contacted counsel for the defendants, who also had had no contact from Attorney Harris. On June 24, 2014, the court sent a notice saying that the matter was being placed on the July 28, 2014 dismissal calendar.

¶25 On July 17, 2014, Attorney Harris wrote to the court asking the matter be removed from the dismissal calendar and saying he intended to have the amended complaint filed by

July 31, 2014. Defense counsel filed an objection to removing the case from the dismissal calendar.

¶26 On July 31, 2014, the court signed an order for dismissal of the case. That same day, Attorney Harris filed a motion to file an amended complaint, a supporting affidavit, and an amended complaint. The court took no action on those filings.

¶27 On August 11, 2014, Attorney Harris filed a motion to reopen the case, citing personal reasons for his failure to file an amended complaint. The court denied the motion on August 27, 2014, finding that no good cause existed to vacate the dismissal order.

¶28 On August 29, 2014, Attorney Harris refiled the lawsuit. On June 10, 2015, the defendants filed a motion to dismiss and later a motion for summary judgment. Due to a judicial transfer of the case and the rescheduling of both defense motions, no substantive activity took place in the case until February 29, 2016. On that date, the court dismissed two parties from the lawsuit and denied the motion for dismissal and summary judgment as to other parties. A pretrial conference was scheduled for September 2016 and later continued to October 18, 2016, at which time trial was set for June 19, 2017.

¶29 On June 14, 2017, defense counsel requested and was granted an adjournment of the trial. A pretrial conference was scheduled for July 6, 2017. Attorney Harris failed to appear at the July 6 pretrial conference.

9

¶30  On July 7, 2017, J.H. emailed Attorney Harris saying, "What's going on with my case?  I see on ccap that you didn't show up in court yesterday."  Attorney Harris responded by saying he never received the notice.  On July 12, 2017, the defendants filed a motion to dismiss due, in part, to Attorney Harris' nonappearance.

¶31  On July 14, 2017, J.H. asked Attorney Harris, "What have you done as far as a follow up?  I see that they have filed for a motion to dismiss."  Attorney Harris responded he would be filing a response by the following Monday.  In fact, Attorney Harris' brief in opposition to the motion to dismiss was not filed until August 28, 2017.  On August 31, 2017, the motion to dismiss was denied and trial was scheduled for November 20, 2017.

¶32  When J.H. had not heard from Attorney Harris since the August 31, 2017 hearing on the motion to dismiss, he emailed Attorney Harris on November 16, 2017, asking if the trial was still on for November 20, 2017.  Attorney Harris responded that same day saying they needed to meet at his office on November 19, 2017, the day before the trial.  Attorney Harris had never deposed any witnesses and conducted minimal or no discovery. The case settled on the day of trial.

¶33  The OLR's complaint alleged the following counts of misconduct with respect to Attorney Harris' representation of J.H.:

**Count 3:**  By failing to timely file an amended complaint and by failing to adequately prepare for

10

trial in J.H.'s cases, Attorney Harris, in each instance violated SCR 20:1.3.

**Count 4:**  By failing to keep J.H. reasonably informed regarding the status of the case, Attorney Harris violated SCR 20:1.4(a)(3).[3]

¶34 The referee was appointed on August 11, 2020.  On December 28, 2020, the parties filed a stipulation in which Attorney Harris pled no contest to the four counts of misconduct alleged in the OLR's complaint and agreed that the referee could use the allegations of the complaint as an adequate factual basis to support the allegations of misconduct.  The parties agreed, subject to approval of the referee, that the appropriate level of discipline to be imposed for Attorney Harris' misconduct was a 60-day suspension of his license to practice law in Wisconsin.

¶35 The referee issued his report and recommendation on January 21, 2021.  The referee adopted as his findings of fact the entire contents of the parties' stipulation and, by extension, those paragraphs of the OLR's complaint detailing the misconduct.  The referee found that the OLR had met its burden of proof with respect to all four counts of misconduct alleged in the complaint.

¶36 As to the appropriate sanction, the referee noted Attorney Harris' lengthy disciplinary history and pointed out that in each of the prior disciplinary matters Attorney Harris was disciplined, at least in part, for failing to keep his

---

[3] SCR 20:1.4(a)(3) provides:   "A lawyer shall keep the client reasonably informed about the status of the matter."

11

clients informed about the status of their matters or for failing to respond to inquiries from his clients. The referee said, "Here we go again."

¶37 The referee noted that Attorney Harris repeatedly failed in his responsibility to maintain an appropriate level of communication with his clients in order to keep them apprised of the status of their respective matters, and in multiple instances default judgments were entered against his clients. The referee said the fact that the cases were ultimately reopened and settled did not change the fact that the clients suffered perhaps the loss of a faster resolution, and certainly, the angst of not knowing what was transpiring or when, or even if, Attorney Harris would bring the requisite motions to reopen. The referee said the overarching failure in this case was Attorney Harris' continued inability to maintain a sufficient level of communication with his clients and to meet basic requirements with respect to court filings and court dates. The referee said:

> The respondent's failure to keep his clients informed and to engage in even a modest level of professional attention to the legal steps needed to protect his client's interests strikes at the very core of the attorney client relationship. Clients trust their attorney to either prosecute or defend their case to the best of their ability. When a lawyer fails to protect those rights and fails to keep their client informed about what is happening they harm not only that client but the legal profession as a whole.

¶38 The referee said although Attorney Harris failed in his responsibility to his clients once again, given the

relatively minor nature of the harm that resulted, his cooperation with the OLR proceeding and his acceptance of responsibility, a 60-day license suspension was an appropriate sanction. The OLR did not seek restitution, and the referee did not order restitution.[4] The referee also recommended that Attorney Harris pay the full costs of the disciplinary proceeding.

¶39 We will affirm a referee's findings of fact unless they are clearly erroneous. See In re Disciplinary Proceedings Against Eisenberg, 2004 WI 14, ¶5, 269 Wis. 2d 43, 675 N.W.2d 747. The court may impose whatever sanction it sees fit, regardless of the referee's recommendation. See In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

---

[4] In its restitution statement, the OLR stated that its policy is to seek restitution only where: (1) There is a reasonably ascertainable amount; (2) The funds to be restored were in the respondent lawyer's direct control; (3) The funds to be restored do not constitute incidental or consequential damages; and (4) The grievant's or respondent's rights in a collateral proceeding will not likely be prejudiced. We remind the OLR that on January 16, 2020, the OLR's Board of Administrative Oversight (BAO) issued a report to this court recommending that the OLR's restitution policy should reflect the approach employed in In re Disciplinary Proceedings Against Ruppelt, 2017 WI 80, 377 Wis. 2d 441, 898 N.W.2d 473 and In re Medical Incapacity Proceedings Against Muwonge, 2017 WI 12, 373 Wis. 2d 173, 890 N.W.2d 575, and the BAO recommended that the OLR's restitution policy shift the burden onto the attorney to establish what offset, if any, is appropriate in determining the amount of restitution. Although the OLR's restitution statement is not framed in these terms, we read the restitution statement to mean that the OLR has determined that Attorney Harris met his burden to establish that he earned the fees he collected from his clients.

¶40 There is no showing that any of the referee's findings of fact, based on the parties' stipulation, are clearly erroneous, so we adopt them. We also agree with the referee's legal conclusions that Attorney Harris violated the Supreme Court Rules noted above.

¶41 With respect to the appropriate sanction, after careful consideration, we agree that a 60-day suspension of Attorney Harris' law license is appropriate. We reach this conclusion in spite of the fact that this is Attorney Harris' sixth disciplinary proceeding; the last proceeding resulted in a five-month license suspension; and the common theme running through all of the proceedings is, as the referee pointed out, Attorney Harris' objective failure to keep his clients informed and meet basic requirements with respect to court filings and court dates.

¶42 We note, however, that it has been eight years since Attorney Harris' last suspension; that case involved ten counts of misconduct involving multiple clients; and involved a violation of SCR 20:8.4(c), dishonesty, fraud, deceit, or misrepresentation. We agree with the referee that the gravity of the misconduct here does not rise to the level of the misconduct that gave rise to the 2013 suspension. Instead, the misconduct in this case is very similar in nature to the 2010 case in which a 60-day suspension was imposed. We also note that Attorney Harris accepted responsibility for his actions and entered into a comprehensive stipulation, which obviated the need for a protracted disciplinary proceeding.

14

¶43 Although no two disciplinary matters are identical, the imposition of a 60-day suspension is similar to the sanction imposed in In re Disciplinary Proceedings Against Anderson, 2020 WI 82, 394 Wis. 2d 190, 950 N.W.2d 191. Attorney Anderson received a 60-day suspension for six counts of misconduct arising out of two client matters. The misconduct included failing to communicate with clients and failing to timely respond to clients' requests for information. Attorney Anderson had been the subject of four previous disciplinary proceedings, three reprimands and a 60-day suspension. As in this case, a significant amount of time had passed since the last time the attorney had been sanctioned. In addition, this case is somewhat analogous to In re Disciplinary Proceedings Against Hudec, 2019 WI 39, 386 Wis. 2d 371, 925 N.W.2d 2d 540. Attorney Hudec received a 60-day suspension for six counts of misconduct in two client matters. It was his sixth disciplinary proceeding. He had previously received three private reprimands and two public reprimands. The misconduct included failing to act with reasonable diligence and promptness in representing a client and failing to keep the client reasonably informed about the status of the matter. Based on the particular circumstances of this case, and guided by past precedent, we conclude that a 60-day suspension of Attorney Harris' license is an appropriate sanction.

¶44 As is our normal practice, we deem it appropriate to impose the full costs of this proceeding on Attorney Harris.

15

¶45 IT IS ORDERED that the license of Benjamin J. Harris to practice law in Wisconsin is suspended for a period of 60 days, effective May 18, 2021.

¶46 IT IS FURTHER ORDERED that within 60 days of the date of this order, Benjamin J. Harris shall pay to the Office of Layer Regulation the costs of this proceeding, which are $1,616.83 as of February 8, 2021.

¶47 IT IS FURTHER ORDERED that Benjamin J. Harris shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶48 IT IS FURTHER ORDERED that compliance with all conditions of this order is required for reinstatement. See SCR 22.28(2).

1