**2025 WI 39**

# Supreme Court of Wisconsin



IN THE MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
ROBERT T. MALLOY, ATTORNEY AT LAW

OFFICE OF LAWYER REGULATION,
*Complainant,*

*v.*

ROBERT T. MALLOY,
*Respondent.*

No. 2023AP923-D

Decided August 14, 2025

ATTORNEY DISCIPLINARY PROCEEDING

¶1 PER CURIAM.[1]  In this attorney disciplinary proceeding, we review the report and recommendation of the referee, the Hon. Jean DiMotto. Based on Attorney Robert T. Malloy's no-contest plea to eight counts of professional misconduct, the referee recommended that this court suspend Attorney Malloy's license to practice law in Wisconsin for a period of two years. As Attorney Malloy voluntarily withdrew his notice of appeal, we review this matter pursuant to Supreme Court Rule (SCR) 22.17(2).[2]

---

[1] All work on this opinion was completed on or before July 31, 2025, at a time when Justice Ann Walsh Bradley was a member of the court.

[2] Supreme Court Rule 22.17(2) states that "(i)f no appeal is filed timely, the supreme court shall review the referee's report; adopt, reject or modify the

Per Curiam

Having carefully reviewed the record in this matter, we conclude that a suspension of 18 months is sufficient to satisfy the purposes of professional discipline. We also order Attorney Malloy, if he has not already done so, to pay restitution to one of his former clients. Finally, we require Attorney Malloy to pay the full costs of this disciplinary proceeding.

## I.     PROCEDURAL HISTORY OF THIS PROCEEDING

¶2     We begin our review with the procedural history of this disciplinary proceeding. The referee included in her report a substantial number of facts regarding how Attorney Malloy failed to follow various rules and directives during this proceeding, which in her view warranted a higher level of discipline. Because the referee referenced those shortcomings in her sanction analysis, we summarize them here.

¶3     After Attorney Malloy admitted service of the Office of Lawyer Regulation's (OLR) complaint, his deadline to file and serve his answer or other responsive pleading was July 27, 2023. The referee found that Attorney Malloy dated his answer as of that date, but he did not file it or serve it on that date. In fact, he did not serve the answer on the OLR until August 18, 2023, which was the date of the initial telephonic scheduling conference. Attorney Malloy, however, did not file his answer with the clerk of this court, nor did he provide a copy of his answer to the referee. When Attorney Malloy still had not sent a copy of his answer to the referee three weeks later, the referee was forced to send him an email reminding him to do so. At that point, Attorney Malloy sent an undated and unsigned copy of the answer to the referee, but he still did not file the answer with the clerk. Indeed, the only copy of the answer that is in the clerk's record of this proceeding is a copy that the referee provided to the clerk when the referee filed her report a year later.

¶4     As noted above, Attorney Malloy ultimately did enter into a stipulation with the OLR. In that stipulation Attorney Malloy confirmed that he was pleading no-contest to all eight counts of misconduct alleged in the OLR's complaint. He agreed that the referee could use the allegations of the complaint as the factual basis for his no-contest plea. The stipulation

referee's findings and conclusions or remand the matter to the referee for additional findings; and determine and impose appropriate discipline."

2

also listed Attorney Malloy's rights, averred that Attorney Malloy understood those rights and was waiving them, stated that the stipulation was not the result of plea bargaining, and affirmed that Attorney Malloy was entering into the stipulation knowingly and voluntarily.

¶5      While the stipulation provided that Attorney Malloy was not contesting the allegations of misconduct, it did not include any agreement as to the appropriate level of discipline. Consequently, the referee scheduled a sanction hearing and established pre-hearing deadlines for various matters. The referee noted in her factual findings that, while the OLR timely served its witness list, Attorney Malloy failed to serve his witness list by the established deadline. When he did submit a witness list to the referee three days after the deadline, it was undated and unsigned. In addition, Attorney Malloy failed to file it with the clerk of this court, as he was required to do. SCR 22.13(5) ("Following the appointment of a referee, the parties shall file all papers and pleadings with the supreme court and serve a copy on the referee.").

¶6      When the sanction hearing had to be rescheduled, the referee sent an email to Attorney Malloy asking for a time when the referee and the parties could have a telephonic scheduling conference to set a new date for the sanction hearing. Attorney Malloy failed to respond to the referee's email. Nine days later, the referee called Attorney Malloy and left him a voicemail message, but he still did not respond. After the referee sent another follow-up email, Attorney Malloy finally responded regarding his availability for a sanction hearing.

¶7      The referee held a three-hour sanction hearing on February 2, 2024. Pursuant to a request from the OLR, the referee set a schedule for the parties to submit post-hearing sanction memoranda.

¶8      The OLR filed its sanction memorandum on time under the established schedule. Its memorandum discussed four cases that it believed supported its request for a six-month suspension.

¶9      Attorney Malloy failed to file his post-hearing sanction memorandum by the scheduled deadline. His memorandum was post-marked six days after the deadline. As with his answer and his witness list, Attorney Malloy failed to file the original with the court. In addition, Attorney Malloy's sanction memorandum referenced three letters that Attorney Malloy said he was enclosing with the memorandum. Only two

letters, however, were actually enclosed with the memorandum sent to the referee. Those letters were from two individuals associated with companies for which Attorney Malloy was currently working (in a non-legal role). One of the enclosed letters had not even been signed. While one of the letter authors had been listed on Attorney Malloy's witness list, the other had not been listed. In any event, neither individual had appeared and testified at the sanction hearing.

¶10 The referee refused to consider either of the letters. She indicated that she found it to be improper for Attorney Malloy to submit testimony in the form of a letter after the sanction hearing without the letter-writers having testified under oath at the hearing so that the OLR could cross-examine them and the referee could judge their credibility.

¶11 In addition to the improper letters, the referee also indicated that Attorney Malloy's sanction memorandum had improperly included statements regarding one of the representations at issue that were outside the scope of the client's testimony at the sanction hearing. Consequently, the referee also refused to consider those statements.

## II. ATTORNEY MALLOY'S DISCIPLINARY HISTORY

¶12 We now turn to Attorney Malloy's practice and disciplinary history. He was admitted to the practice of law in Wisconsin in August 1992. He has a substantial disciplinary history.

¶13 In 1994, just two years after his admission to practice, Attorney Malloy received a consensual public reprimand from the Board of Attorneys Professional Responsibility (BAPR).[3] Public Reprimand of Robert T. Malloy, No. 1994-8. His misconduct included lack of diligence (failing to appear at court proceedings following his transition to a new law firm, failing to notify courts of his new address, and failing to check on the status of pending cases); inadequate trust account recordkeeping; commingling

---

[3] In 1994, this court's rules authorized the Board of Attorneys Professional Responsibility to impose a private or public reprimand with the consent of the respondent attorney. At that time there was no review of such a consensual reprimand by a referee or the court.

small amounts of client and personal funds; and practicing while his license was administratively suspended.

¶14     In 1997, Attorney Malloy was the subject of two disciplinary proceedings. In the first proceeding, this court suspended his license for one year. *In re Disciplinary Proceedings Against Malloy*, 209 Wis. 2d 264, 562 N.W.2d 264 (1997). His misconduct in that proceeding arose out of eight separate representations and a trust account overdraft. He was found to have committed violations of the following ethical rules:  SCR 20:1.15—failure to maintain complete trust account records (one count); SCR 20:1.15(a)—commingling of client trust funds and personal funds (one count); SCR 20:1.4(a)—failure to keep his clients reasonably informed and to respond to requests for information (five counts); SCR 10:1.3—failure to act with reasonable diligence and promptness (two counts); SCR 20:1.16(d)—failure to return a client's property and unearned fees upon termination of the representation (two counts); and SCR 22.07(2) and (3) and SCR 21.03(4)—failure to cooperate with a disciplinary investigation or to produce records during an investigation (five counts). In addition to imposing the one-year suspension, this court ordered that, upon the reinstatement of Attorney Malloy's license, he would be required for a period of two years to submit to quarterly audits of his client trust account records.

¶15     In the second 1997 proceeding, this court imposed a consecutive three-month suspension. *In re Disciplinary Proceedings Against Malloy*, 212 Wis. 2d 649, 568 N.W.2d 638 (1997). That proceeding involved four separate matters. In the first matter, Attorney Malloy failed to submit proper findings of fact, conclusions of law, and a judgment of divorce for more than 18 months, despite multiple attempts to do so, and multiple inquiries from the circuit court. Ultimately, a court commissioner had to correct by hand the defective document that Attorney Malloy had submitted. He also failed to respond to BAPR's letters seeking information about the client's grievance. In the second matter, Attorney Malloy failed to appear at court proceedings in two criminal cases, and he failed to return the unearned advanced fee that he had been paid. He again failed to respond to BAPR's investigative requests for information. In the third matter, Attorney Malloy failed to respond to discovery requests in a civil action, attempted to cancel his client's deposition at the last minute without his client's knowledge, and failed to respond to inquiries from his client. His conduct caused the client to have to pay $250 in fees to opposing counsel. As in the previous two matters, Attorney Malloy failed to respond

to BAPR's requests for information. In the fourth matter, Attorney Malloy failed to file the necessary documents in a timely manner to obtain the return of his client's brother's car, as he had been hired to do, which resulted in the car being forfeited to the government. Again, Attorney Malloy did not respond to BAPR's investigative requests for information. As a result of his actions in these four representations, Attorney Malloy was found to have violated the following rules:  SCR 20:1.3—failure to act with reasonable diligence and promptness (three counts); SCR 20:1.4(a)—lack of communication (two counts); SCR 20:1.16(d)—failure to return unearned advanced fee to client upon termination of representation (one count); and SCR 22.07(2) and (3) and SCR 21.03(4)—failure to cooperate with a disciplinary investigation (repeated violations).

¶16    In 2000, Attorney Malloy petitioned unsuccessfully for the reinstatement of his license. This court denied his petition on the grounds that he had failed to comply fully with the requirements of SCR 22.26 following his suspensions, had failed to demonstrate that his resumption of the practice of law would not be detrimental to the administration of justice, and had failed to establish that he possessed the necessary moral character to practice law in this state. *In re Disciplinary Proceedings Against Malloy*, Nos. 1996AP1300 and 1996AP3636, unpublished order (Sept. 21, 2001).

¶17    Although Attorney Malloy's license had been suspended in 1997, in 2002 this court imposed another public reprimand on him as a result of a grievance relating to Attorney Malloy's actions that occurred prior to his suspensions. In that proceeding Attorney Malloy entered into a stipulation with the OLR. He had been retained to represent a woman in a divorce proceeding. The circuit court orally granted the divorce in August 1994. As the attorney for the moving party, Attorney Malloy was required to file findings of fact, conclusions of law, and a judgment of divorce consistent with the circuit court's rulings on the record within 30 days of the final hearing. Attorney Malloy never did so. In December 1995, approximately 19 months after the divorce had been orally granted, the court sent him a letter directing him to file the required documents within 15 days. Attorney Malloy spoke with the court's law clerk and stated that he was having trouble with the task. He did not file the documents or otherwise respond to the court's letter. His failure to file the documents prevented the client from filing a contempt motion against her former husband for failure to pay child support. In 1997, the client consulted another lawyer, who made several attempts to communicate with Attorney Malloy and obtain the client's file. Attorney Malloy failed to return the

lawyer's phone calls and failed to forward the client's file. Ultimately, the client was forced to pay for a transcript of the August 1994 final hearing and then, on her own, to draft the required findings of fact, conclusions of law, and judgment of divorce. The circuit court entered her pro se document in February 1998, three and a half years after the court had orally granted the divorce. In the disciplinary stipulation, Attorney Malloy admitted that he had violated SCR 20:1.3—failure to act with reasonable diligence and promptness, and SCR 20:1.16(d)—failure to return the client's file upon request. This court issued an order to show cause directing the OLR and Attorney Malloy to show cause why a more severe level of discipline should not be imposed and why restitution should not be ordered. After receiving the parties' responses, this court imposed the public reprimand and did not order restitution.

¶18    Attorney Malloy's license remained suspended from 1997 until February 2019, when this court granted his second petition for reinstatement. The court imposed certain conditions on Attorney Malloy's resumption of the practice of law. First, we required Attorney Malloy to attend the OLR's trust account seminar, which Attorney Malloy actually did twice. Second, we ordered Attorney Malloy to provide the OLR with his trust account and business account records for a period of two years in the expectation that Attorney Malloy's problems with maintaining his client trust account and handling client trust funds would not reappear.

¶19    In August 2021, the OLR advised the court that, while the two-year time period for Attorney Malloy's account records condition had expired, he had not been in compliance with that condition while it had been in effect. Specifically, the OLR stated that, despite its letters specifying which records he needed to provide, Attorney Malloy had "only sporadically provided trust account records to OLR" and had never provided his business account records. We issued an order directing Attorney Malloy to show cause why his license to practice law should not be suspended for non-compliance with the 2019 reinstatement order. *In re Disciplinary Proceedings Against Malloy*, Nos. 1996AP1300-D and 1996AP3636-D, unpublished order (Sept. 14, 2021). In response to our order, Attorney Malloy provided the OLR with the required records, which the OLR reported to the court. Consequently, the court issued an order stating that it would take no action on the matter. *In re Disciplinary Proceedings Against Malloy*, Nos. 1996AP1300-D and 1996AP3636-D, unpublished order (Dec. 15, 2021).

## III.  REFEREE'S REPORT

¶20   The allegations in this disciplinary proceeding arise out of Attorney Malloy's representations of two clients:  B.Y. and S.M.

### A.  Facts and Misconduct Counts re: Representation of B.Y.

¶21   Counts 1-6 of the OLR's complaint relate to Attorney Malloy's representation of B.Y., who had been charged with multiple felonies in a Sheboygan County case. B.Y.'s family paid a flat $3,000 amount to Attorney Malloy. The complaint alleged and the referee found that because this fee had been paid in contemplation of future representation of B.Y. by Attorney Malloy, it constituted an "advanced fee" under SCR 20:1.0(ag), which was subject to the requirements of SCR 20:1.5(f) or (g), SCR 20:1.5(h), SCR 20:1.15(f)(3), and SCR 20:1.16(d). Attorney Malloy did send an engagement letter to B.Y. on March 1, 2021, as required by SCR 20:1.5(b)(1) and (2). The engagement letter characterized the $3,000 payment as a "flat fee," but it did not specify the purpose or effect of this advanced fee under the applicable rules. It also did not state whether Attorney Malloy would potentially refund a portion of the fee to B.Y. or his family if a portion would be unearned.

¶22   The referee found that because the $3,000 payment was an advanced fee and the engagement letter did not specify that the money would be deposited into a business account, Attorney Malloy was required to deposit the money into his client trust account. SCR 20:1.5(f). Although Attorney Malloy had twice attended the OLR's trust account seminar, he deposited the entire amount into his business account. At the sanction hearing, Attorney Malloy claimed that he still was confused about the handling of advanced fees.

¶23   Attorney Malloy also testified at the sanction hearing that he did not accept telephone calls from B.Y. unless he had something new to tell him. He visited B.Y. in jail on three occasions. According to B.Y., Attorney Malloy had agreed to file a motion to suppress evidence in his case, but he failed to do so. On July 9, 2021, three days before the deadline for filing motions to suppress, B.Y. wrote to the circuit court judge and stated that he wished to fire Attorney Malloy due to his failure to communicate and his failure to file a suppression motion. On July 20, 2021, Attorney Malloy met with B.Y. to discuss the suppression motion and to

8

prepare for trial. Two weeks later Attorney Malloy filed a motion to withdraw from representing B.Y.

¶24    Through intermediaries, B.Y. requested that Attorney Malloy refund $2,000 of the advanced fee. Attorney Malloy responded that B.Y. needed to contact him directly about any refund. B.Y. subsequently wrote a letter to Attorney Malloy requesting a refund, but Attorney Malloy did not respond.

¶25    B.Y. hired Attorney Brett Kaehne as successor counsel. On August 11, 2021, Attorney Kaehne's paralegal sent an email and an authorization for the release of confidential information to Attorney Malloy, asking him to forward B.Y.'s file. Attorney Malloy failed to respond to the email. The paralegal sent a second email on August 26, 2021, asking when the file would be forwarded. On that same date, Attorney Kaehne sent a letter requesting the file to Attorney Malloy and also attempted to reach him by telephone. Attorney Malloy did not respond to any of these communications.

¶26    Having heard nothing from Attorney Malloy, on September 10, 2021, Attorney Kaehne wrote a letter to the circuit court, in which he asked the court to order Attorney Malloy to deliver B.Y.'s file. The court issued the requested order on September 11, 2021. Attorney Kaehne mailed and emailed copies of the order to Attorney Malloy on September 14, 2021. Attorney Malloy still did not respond.

¶27    On November 4, 2021, Attorney Kaehne again wrote the circuit court to advise that Attorney Malloy had failed to comply with the court's order. At that point, the court wrote directly to Attorney Malloy, instructing him to provide B.Y.'s file to Attorney Kaehne by November 22, 2021. The court advised Attorney Malloy that if he failed to comply, the court would issue an order directing him to explain why he should not be held in contempt. Despite the threat of contempt sanctions, Attorney Malloy still failed to meet the court's deadline.

¶28    It was not until a week after the court's deadline had passed that Attorney Malloy sent 23 pages of B.Y.'s file to Attorney Kaehne. Attorney Malloy did not send 300 pages of discovery materials to Attorney Kaehne. Attorney Malloy contended that he had told Attorney Kaehne's paralegal that Attorney Kaehne's office should get the discovery materials from the district attorney's office.

¶29     During these events, B.Y. filed a grievance against Attorney Malloy with the OLR. On November 17, 2021, the OLR sent Attorney Malloy a copy of the written grievance and a request for a response. Attorney Malloy failed to provide the requested response.

¶30     On February 4, 2022, the OLR requested that Attorney Malloy respond to eight specific questions related to B.Y.'s grievance and that he provide specified documents. The OLR's letter set a deadline of February 28, 2022, for Attorney Malloy's response, but he again did not respond.

¶31     On March 1, 2022, the OLR sent Attorney Malloy a reminder of his need to respond to its requests. At that point, Attorney Malloy sent a request for an extension of time until March 8, 2022. The OLR granted the extension. On March 8, 2022, Attorney Malloy did finally send a response to the OLR. Although the response provided some of the requested information, Attorney Malloy failed to fully respond to the OLR's questions and failed to provide many of the requested documents, including the engagement letter, the circuit court's order, and correspondence related to B.Y.'s case. In his response, Attorney Malloy referred to the $3,000 advanced fee payment received from B.Y.'s relatives as a nonrefundable retainer, which is not proper under the Rules of Professional Conduct for Attorneys.

¶32     On March 11, 2022, the OLR sent a reply to Attorney Malloy, informing him that his response was deficient in multiple respects and giving him until March 21, 2022, to supplement his response. Attorney Malloy did not respond by the deadline.

¶33     On March 22, 2022, the OLR sent a letter to Attorney Malloy via both regular mail and email, informing him that, given his failure to submit an adequate response to its investigatory requests, his license to practice law in Wisconsin would be automatically suspended unless he took one of the three actions specified in SCR 22.03(4) within 20 days of the letter being personally served on him. Specifically, in order to avoid a temporary suspension for failure to cooperate with the OLR's investigation, Attorney Malloy was required to (1) provide a complete response as specified in the OLR's March 11, 2022 letter, (2) submit evidence to the reasonable satisfaction of the OLR's Director that he was unable to provide the requested information, or (3) file a motion with this court showing cause why his license should not be suspended.

¶34 On March 23, 2022, Attorney Malloy sent an email to the OLR, in which he said that he was "[a]lmost done with the response," that the engagement agreement he had used had been "borrowed" from other attorneys, and that his ledger for B.Y.'s representation had previously been provided to the OLR.

¶35 The OLR's March 22, 2022 letter was personally served on Attorney Malloy on March 24, 2022. This meant that the 20-day deadline for taking one of the three actions needed to avoid a temporary suspension was April 13, 2022. Despite his March 23, 2022 email claiming that his response was "[a]lmost done," Attorney Malloy failed to submit a response by April 13, 2022. Consequently, his license was automatically temporarily suspended as of April 14, 2022. On that date, the OLR sent a notice to Attorney Malloy via both email and regular mail, advising him that his license to practice law had been suspended as of that date. The email was entitled "Notice of Suspension." Attorney Malloy did not open the email and claimed in his post-hearing sanction brief that he had not been aware of the temporary suspension of his license.

¶36 At 8:01 p.m. on April 14, 2022, Attorney Malloy sent an email to the OLR, attached to which was a document entitled "Supplemental Response to Complaint of [B.Y.]." The letterhead on the attached document listed a different email address for Attorney Malloy than the one the OLR had been using for sending emails to him. Attorney Malloy's "Supplemental Response" was still deficient. It claimed that two documents were enclosed with the "Supplemental Response," (a "reconstructed" engagement letter and a "reconstructed" account ledger for B.Y.), but neither document was actually attached to the email or the "Supplemental Response." In addition, the "Supplemental Response" failed to respond to several of the OLR's questions and failed to provide other documents that the OLR had also requested.

¶37 On Friday, April 15, 2022, the OLR sent a reply message to both of Attorney Malloy's email addresses. The reply advised Attorney Malloy that his "Supplemental Response" was insufficient and that his law license remained temporarily suspended.

¶38 On Tuesday, April 19, 2022, Attorney Malloy sent several emails to the OLR. The emails provided additional information and attached copies of several additional documents. One of the documents was a letter that Attorney Malloy indicated he would be sending to B.Y., which

addressed payment of the requested refund of $2,000.00. Although there were still gaps in the information provided by Attorney Malloy, the OLR deemed these additional emails to be sufficient to permit it to continue its investigation. Consequently, it informed Attorney Malloy that his temporary suspension would be lifted, with the proviso that the OLR expected Attorney Malloy to provide the still missing information or explain why he could not do so.

¶39     Although the OLR lifted the temporary suspension, Attorney Malloy failed to provide the requested additional information. Further, B.Y. told the OLR that he had never received any letter or check from Attorney Malloy. At the subsequent sanction hearing, it became clear that Attorney Malloy sent the letter and refund check to B.Y. in care of the Redgranite Correctional Institution. B.Y., however, was not imprisoned at that facility at the time of the letter (and apparently never had been). Attorney Malloy simply sent the letter and check to the facility where he thought B.Y. would be imprisoned, without doing any investigation to determine where B.Y. was actually imprisoned. Attorney Malloy also failed to take any corrective action when the envelope containing the letter and check was returned to him as undeliverable. Attorney Malloy learned of B.Y.'s actual location only at the sanction hearing in this proceeding, which occurred almost two years after Attorney Malloy had sent the letter and check to the wrong correctional facility and more than three years after B.Y. had requested a partial refund of the advanced fee.

¶40     At the sanction hearing, Attorney Malloy promised that he would send the letter and refund check to B.Y. at the correct facility. Although the referee directed him to provide verification that B.Y. had received the letter and the refund check, Attorney Malloy never provided any verification.

¶41     As a final point with respect to the matter involving B.Y., the referee noted that although Attorney Malloy had stipulated to and pled no-contest to all six counts of the OLR's complaint regarding his representation of B.Y., at the sanction hearing Attorney Malloy nonetheless disputed the OLR's claim that he had failed to cooperate with its investigation of this matter, as alleged in Count 6 of the complaint.

¶42     Based on the referee's factual findings as summarized above, which were derived from the OLR's complaint and the proceedings in this

case, the referee concluded that Attorney Malloy had committed the ethical violations alleged in the first six counts of the OLR's complaint, as follows:

> Count 1:  By failing to explain to B.Y. the purpose and effect of the $3,000.00 paid by his family on B.Y.'s behalf, Attorney Malloy violated SCR 20:1.5(b)(2);
>
> Count 2:  By depositing the $3,000.00 advanced fee into his business account rather than his client trust account, Attorney Malloy violated SCR 20:1.5(f);
>
> Count 3:  By failing to respond to B.Y.'s request for an accounting upon termination of the representation, Attorney Malloy violated SCR 20:1.5(b)(3);
>
> Count 4:  By failing to comply with the circuit court's September 11, 2021 order to produce B.Y.'s client file to successor counsel, Attorney Malloy violated SCR 20:3.4(c);
>
> Count 5:  By failing, after the termination of the representation, to deliver B.Y.'s client file to successor counsel and by failing to refund any of the advanced fee that had not been earned because he had not performed all contemplated legal services, Attorney Malloy violated SCR 20:1.16(d); and
>
> Count 6:  By failing to timely and fully respond to the OLR's requests for information and to cooperate with the OLR's investigation, Attorney Malloy violated SCR 22.03(2) and (6), which are enforced via SCR 20:8.4(h).

### B.  Facts and Misconduct Counts re: Representation of S.M.

¶43  The second representation at issue in this disciplinary proceeding is Attorney Malloy's representation of S.M. in a divorce proceeding in Juneau County. In January 2021, Attorney Malloy filed the divorce petition on behalf of S.M. against his wife, T.M., who was unrepresented. The judge presiding over the action, Judge Stacy Smith, ultimately submitted the grievance to the OLR regarding Attorney Malloy's conduct in the divorce action. Judge Smith reported to the OLR that there had been many errors in the petition for divorce, including misspellings of the parties' names and incorrect dates. Attorney Malloy also filed the

divorce petition without obtaining the required signature of his client. Both Attorney Malloy and T.M. failed to move this action properly toward a conclusion. T.M. failed to respond to requests for documents and failed to complete the necessary financial paperwork in advance of an August 25, 2021 status conference. At a subsequent status conference on November 18, 2021, Attorney Malloy informed Judge Smith that the parties had reached a resolution, but they needed time to complete a Marital Settlement Agreement and other necessary documents.

¶44     A final hearing in the action was scheduled for December 8, 2021, but the divorce could not be completed because neither party had filed the required financial documents and Attorney Malloy had not filed the Marital Settlement Agreement. Judge Smith was forced to reschedule the final hearing to January 6, 2022, and ordered Attorney Malloy to file the required documents at least two days in advance of the final hearing.

¶45     At the rescheduled hearing, the parties informed Judge Smith that they still had unresolved issues. Judge Smith recessed the hearing to give the parties time to reach an agreement. When he reconvened the hearing, Judge Smith learned that S.M.'s financial statement was not complete because his pension had not been disclosed and other assets had been misidentified. Judge Smith was forced to recess the hearing until February 22, 2022. On that date, Attorney Malloy advised the court that he was not prepared to proceed because he still did not have all of the necessary information regarding S.M.'s pension. Judge Smith expressed his frustration because Attorney Malloy had not advised him of this fact in advance of the hearing, which wasted the court's time. Judge Smith rescheduled the final hearing to April 18, 2022, and again directed Attorney Malloy to file the necessary documents two days in advance of the hearing.

¶46     As explained above, on April 14, 2022, Attorney Malloy's license was temporarily suspended due to his failure to cooperate with the OLR's investigation of B.Y.'s grievance. Attorney Malloy did not file the documents in S.M.'s divorce action, as he had been directed to do. Judge Smith discovered this fact on April 17, 2022, the day before the rescheduled final hearing. He therefore changed the scheduled proceeding from a final hearing to a status conference to be conducted via telephone or a Zoom teleconference.

¶47     On April 18, 2022, although his license to practice law had been temporarily suspended, Attorney Malloy filed a number of

documents with the circuit court approximately 30 minutes prior to the scheduled status conference. The documents, however, were incomplete. Attorney Malloy also appeared on behalf of S.M. at the Zoom status conference. Judge Smith commented during that conference that the Marital Settlement Agreement filed by Attorney Malloy had not been signed by the parties. Judge Smith stated that "this is probably the most incompetent case I've ever dealt with an attorney on board." Judge Smith asked Attorney Malloy if he had attended law school and if he was currently licensed. Although his license was then temporarily suspended, Attorney Malloy answered "yes" to both questions. During the OLR's subsequent investigation, Attorney Malloy claimed that he had not been aware of the suspension at the time of the Zoom status conference. Judge Smith checked the status of Attorney Malloy's license the next day and learned that it had been temporarily suspended. At that point, he contacted the OLR, which opened an investigation.

¶48   The referee found that Attorney Malloy should have known that his license had been temporarily suspended prior to the Zoom status conference. The OLR had informed him previously that if he failed to provide the requested information and documents in full in the B.Y. investigation within 20 days of personal service (i.e., by April 13, 2022), his license would be automatically temporarily suspended for failure to cooperate with the OLR's investigation. Since Attorney Malloy had not provided all requested information by the deadline, he "reasonably should have known his license would be suspended the following day" (i.e., April 14, 2022).

¶49   The referee found that Attorney Malloy had not opened the OLR's April 14, 2022 email advising him that his license had been suspended despite the email stating "Suspension Notice" in the subject line and being marked highly important. Attorney Malloy also did not open the OLR's subsequent email informing him that his "Supplemental Response" was still deficient. The referee found that Attorney Malloy's ignoring of the OLR's emails under the circumstances was not the conduct of a reasonably prudent and competent attorney.

¶50   In addition to appearing on the Zoom status conference in S.M.'s divorce action, Attorney Malloy also appeared at a pre-trial conference in a Kenosha County criminal case on April 14, 2022, while his license was temporarily suspended.

¶51 Finally, Attorney Malloy acknowledged that one of the documents he filed with the court in the divorce action on April 18, 2022, was not meant to be publicly disclosed. He admitted with respect to his representation of S.M. that "I am capable of better and the court and clients deserve better."

¶52 The referee concluded that the facts summarized above supported a determination that Attorney Malloy had violated the following ethical rules in connection with his representation of S.M.:

Count 7: By engaging in the practice of law, including by filing documents and appearing in court hearings, when his license was temporarily suspended for failure to cooperate with an OLR investigation, Attorney Malloy violated SCR 22.26(2), which is enforced via SCR 20:8.4(f); and

Count 8: By failing in S.M.'s divorce representation to ascertain assets comprising the marital estate and by filing incomplete, inaccurate, and unsigned documents, Attorney Malloy violated SCR 20:1.1.

### C. Referee's Sanction Recommendation

¶53 The discussion section of Referee DiMotto's report expresses her exasperation with Attorney Malloy, whom she characterizes as "voluble" and as believing that he can talk his way out of all problems. She begins by stating that Attorney Malloy's request for a private or public reprimand shows his "utter failure to truly acknowledge and accept, much less to show authentic remorse for, his misconduct," which caused a judge "keen frustration," required a judicial order and a follow-up letter just to prod Attorney Malloy to follow basic litigation procedures, and "demonstrated a remarkable level of dilatory behavior," which, in one instance, resulted in a temporary suspension of his license.

¶54 Referee DiMotto notes that Attorney Malloy took the position that his misconduct in this proceeding bears little resemblance to his prior misconduct. She rejects this assertion. She states that the prior disciplinary proceedings demonstrate that the misconduct at issue here is part of "an unmistakable pattern of failing to act with reasonable diligence and promptness in representing clients, failing to keep clients reasonably informed, trust account violations, practicing law during administrative

16

suspensions, failing to refund fees after a client has terminated his representation, failing to file court documents, and repeatedly failing to cooperate in the investigations of grievances." She says that this pattern "bodes poorly for his rehabilitation."

¶55    Referee DiMotto also criticizes Attorney Malloy for his "inconsistent defenses" during this disciplinary proceeding. She cites as an example that while Attorney Malloy pled no contest to all of the violations alleged in the OLR's complaint and stipulated that she could use the factual allegations of the complaint as the factual basis for his no-contest plea, both at the sanction hearing and in his post-hearing sanction brief, Attorney Malloy disputed Count 6 (that he had failed to cooperate with the OLR's investigation of B.Y.'s grievance). She indicates that any dispute by Attorney Malloy of that count of the complaint is baseless in light of the fact that Attorney Malloy was repeatedly tardy in submitting responses and those responses were often incomplete, which ultimately resulted in the temporary suspension of his license.

¶56    Referee DiMotto questions Attorney Malloy's explanation as to why he failed to learn of the temporary suspension of his license. He claimed at the sanction hearing that the delay in learning of the suspension was due to his observance of the Roman Catholic Triduum (Maundy Thursday, Good Friday, and Holy Saturday), which occurred in 2021 on April 14-16. The referee points out, however, that the 20-day deadline to submit his supplemental response and avoid the temporary suspension fell on Wednesday, April 13, 2021. Moreover, his claim of not working or reading his email because of his observance of Maundy Thursday is belied by the fact that he made a court appearance on that day and emailed materials to the OLR that evening.

¶57    Referee DiMotto is particularly critical of the fact that, during the sanction hearing, Attorney Malloy repeatedly minimized his misconduct and attempted to shift the blame to others. For example, he essentially claimed that the reason for Judge Smith becoming upset with him were the facts that he had come back from his Easter vacation and was in a bad mood, and that he was a new judge with a background in criminal law who did not understand the realities of handling a divorce proceeding. Attorney Malloy also appeared to blame the employees at his bank for not knowing the difference between client trust accounts and business accounts.

¶58     Referee DiMotto further points to Attorney Malloy's suggestions at the sanction hearing for possible ways to minimize the level of discipline as evidence of his failure to appreciate the seriousness of his misconduct. He suggested that an appropriate form of discipline would be for him to help the Office of the State Public Defender by representing individuals with "mid-level" felony charges. Referee DiMotto says in response that, given that six of the eight counts in this case arise from an unsuccessful representation in a felony case, that suggestion would be wholly inappropriate. Similarly, Attorney Malloy suggested that he could provide pro bono representation to victims of domestic violence. Referee DiMotto again says that, given Attorney Malloy's lack of competence and diligence, this would not be an appropriate form of discipline because it would likely add more distress to the lives of domestic violence victims.

¶59     Referee DiMotto emphasizes that there has been a pattern of similar misconduct that started almost as soon as Attorney Malloy began practicing law. Within two years of his admission, he was the subject of a disciplinary proceeding. He was subsequently suspended from the practice of law for 20 years. Again, within two years of his reinstatement, he was once more engaging in similar misconduct that led to this disciplinary proceeding. Moreover, he has repeatedly attempted to minimize his misconduct and has failed to accept responsibility for his actions. All of these factors lead Referee DiMotto to state that she has "little confidence in his ability to rehabilitate."

¶60     At bottom, Referee DiMotto indicates that she finds Attorney Malloy to be so lacking in basic skills that he should not be practicing law. He cannot properly prepare, date, serve, and file legal documents. He twice failed to attach documents that he referenced in his submissions. He also continued to have problems with appropriate procedures for safekeeping client funds and admitted that he has continuing confusion on the subject, despite having attended the OLR's trust account seminar on two separate occasions. Attorney Malloy was repeatedly dilatory in the underlying representations, in the OLR's investigation of the grievances, and in this disciplinary proceeding, all of which Referee DiMotto characterizes as "breathtaking." Given Attorney Malloy's apparent lack of the basic skills necessary to practice law, Referee DiMotto indicates that, if writing on a blank slate, she would prefer that Attorney Malloy's license would be revoked. She acknowledges, however, that revocation is a severe sanction reserved for the most egregious conduct. On the other hand, she believes that the OLR's requested six-month suspension would be insufficient to

impress upon Attorney Malloy that his conduct is woefully short of the requirements of the Rules of Professional Conduct for Attorneys and that his misconduct causes serious harm to his clients, the public, opposing attorneys, and the courts. She ultimately recommends that the court suspend Attorney Malloy's license for a period of two years.

## IV. REVIEW AND ANALYSIS

¶61 When we review a referee's report in an attorney disciplinary proceeding, we will affirm the referee's findings of fact unless they are found to be clearly erroneous, but we review the referee's conclusions of law on a de novo basis. *In re Disciplinary Proceedings Against Inglimo*, 2007 WI 126, ¶5, 305 Wis. 2d 71, 740 N.W.2d 125. We determine the appropriate level of discipline to impose in light of the particular facts of each case, independent of the referee's recommendation, but benefiting from it. *In re Disciplinary Proceedings Against Widule*, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶62 In this case, there are no disputes regarding the referee's findings of fact or conclusions of law. Attorney Malloy pled no contest to the eight counts of misconduct in the OLR's complaint and stipulated that the referee could use the allegations of the complaint. To the extent that the referee made findings regarding events during this disciplinary proceeding or statements that Attorney Malloy made during his testimony at the sanction hearing, the referee included citations to the record, and they support her findings. Attorney Malloy withdrew his notice of appeal and therefore is not challenging the referee's findings of fact. Moreover, the facts found by the referee adequately support her legal conclusions that Attorney Malloy committed the eight counts of misconduct. We therefore adopt the referee's findings of fact and agree with her conclusions of law.

¶63 The primary issue in our review of this matter is the proper level of discipline to impose for Attorney Malloy's misconduct. While it is understandable that the referee is frustrated with Attorney Malloy's actions, including those during this proceeding, she does not cite a prior disciplinary decision as a basis for her recommendation of a two-year suspension. The OLR cited four prior disciplinary decisions involving similar misconduct as support for its requested six-month suspension, but the referee did not distinguish those cases on their facts or explain the reasons for her suggested substantial departure from that range of discipline.

¶64    We have often said that no two disciplinary cases are exactly alike and that each case must turn on its particular facts. *See*, *e.g.*, *In re Disciplinary Proceedings Against Parks*, 2018 WI 110, ¶67, 384 Wis. 2d 635, 920 N.W.2d. 505; *In re Disciplinary Proceedings Against Jones*, 2008 WI 53, ¶23, 309 Wis. 2d 585, 749 N.W.2d 603. Generally, however, we attempt to fashion a sanction that more or less fits within the framework of prior decisions, increasing or decreasing the level of discipline to account for factual differences from prior cases.

¶65    In this case the OLR cited four prior decisions that it argued were similar in nature and supported its position that the proper level of discipline would be a six-month suspension:    (1) *In re Disciplinary Proceedings Against Mauch*, 2010 WI 2, 322 Wis. 2d 79, 777 N.W.2d 637 (six-month suspension imposed); (2) *In re Disciplinary Proceedings Against Armonda*, 2004 WI 82, 273 Wis. 2d 287, 682 N.W.2d 26 (six-month suspension imposed); (3) *In re Disciplinary Proceedings Against Raftery*, 2007 WI 137, 306 Wis. 2d 28, 742 N.W.2d 315 (six-month suspension imposed); and (4) *In re Disciplinary Proceedings Against Hammis*, 2011 WI 3, 331 Wis. 2d 19, 793 N.W.2d 884 (four-month suspension imposed).  We agree that the nature of the misconduct committed in these decisions is similar, but there are factual differences in each case that lead to the conclusion that a stronger level of discipline is needed in this case.

¶66    For example, in *Mauch*, the attorney had been publicly reprimanded on two occasions and had also received a 90-day suspension. Attorney Mauch did not file an answer in the disciplinary proceeding or respond to the referee's multiple attempts to contact him, which resulted in him being declared in default. His misconduct arose out of his representation of S.Z. in two criminal cases and out of his conduct following an administrative suspension. In the criminal cases, Attorney Mauch was 14 days late in filing a notice of intent to seek post-conviction relief, and he failed to provide his client with a copy of the notice. Indeed, he did not communicate with S.Z. for six months. When the appellate intake coordinator in the Office of the State Public Defender (SPD) pointed out to Attorney Mauch that the time for filing the notice of intent had not been extended, Attorney Mauch responded that he thought the notice had been filed. When he was told that was not the case, he then filed a motion to extend the time for doing so. In addition, he continued to practice law and make court appearances after his license had been administratively suspended. In fact, even after a circuit court judge had showed him a Board of Bar Examiners (BBE) memorandum listing his suspension, Attorney

Mauch attempted to file documents with the local district attorney's office. When he filed a petition for reinstatement from the administrative suspension with the BBE, he falsely stated that he had not practiced law during his suspension. He never admitted to the BBE or the OLR that his reinstatement petition contained a false statement. Finally, Attorney Mauch failed to respond to multiple requests from the OLR seeking a response or additional information regarding its investigation. This court agreed with the referee's recommendation to impose a six-month suspension.

¶67    Both *Mauch* and the present case involve fundamental failures to comply with basic procedural and ethical rules. Both involve a lackadaisical approach to the practice of law, and both include in the misconduct the practice of law while suspended. There are, however, some factors that distinguish the *Mauch* decision from the present case. Attorney Malloy's disciplinary history is longer and more serious than Attorney Mauch's. In addition, there was only one representation at issue in *Mauch* while the current case involves two representations and a longer list of violations. All of this suggests that Attorney Malloy's discipline should be more severe than a six-month suspension.

¶68    As another example, in *Armonda*, the disciplinary history was far less serious. Attorney Armonda's license had been administratively suspended multiple times for failure to report continuing legal education credits and for failure to pay his bar dues, but he had only one prior disciplinary case—a 60-day suspension resulting from a substantial list of ethical violations. In the case that resulted in the 2004 decision, Attorney Armonda stipulated to seven counts of misconduct arising out of four separate grievances. His misconduct included appearing in at least four cases while his license had been administratively suspended, charging a client an unreasonable fee that a bankruptcy court had found to be excessive, failing to provide competent representation by filing a divorce petition that failed to list the number of children born to the marriage, and three counts of failing to cooperate with OLR investigations. This court imposed a six-month suspension for this misconduct.

¶69     Again, Attorney Malloy's disciplinary history and the misconduct in the current case are more serious than Attorney Armonda's, and they warrant a harsher sanction.[4]

¶70     If this were Attorney Malloy's first disciplinary proceeding, a suspension in the range of four to eight months would appear to be appropriate, given our prior decisions involving similar types of misconduct. This is not, however, Attorney Malloy's first instance of

---

[4] In addition to the four cases cited in the OLR's sanction memorandum, we have found a number of other cases involving somewhat similar types of misconduct that also resulted in six-month suspensions. *E.g.*, *In re Disciplinary Proceedings Against Vance*, 2016 WI 89, 372 Wis. 2d 39, 886 N.W.2d 583 (six-month suspension imposed on attorney with no prior disciplinary history other than temporary suspension for 20 counts of misconduct, including failing to act with competence, failing to act with reasonable diligence and promptness (three counts), failing to keep clients informed and to respond to requests for information (three counts), failing to provide client's file to successor counsel, practicing while suspended (three counts), failing to notify client or court of suspension (two counts), and failing to cooperate with OLR investigation (eight counts)); *In re Disciplinary Proceedings Against Harris*, 2013 WI 8, 345 Wis. 2d 239, 825 N.W.2d 285 (six-month suspension imposed on attorney with prior private reprimand, public reprimand, and 60-day suspension for failing to act with diligence (two counts), failing to keep client informed and respond to numerous requests for information (three counts), failing to notify client of suspension, failing to consult with client regarding means by which to pursue client objectives, making multiple misrepresentations, failing to discuss strategy with client, and failing to respond to OLR requests for information); *In re Disciplinary Proceedings Against Wentzel*, 176 Wis. 2d 40, 499 N.W.2d 166 (1993) (six-month suspension imposed on attorney with prior 90-day suspension for failing to act with diligence, misrepresenting to client that he had commenced an action, failing to deposit an advance for costs into client trust account, failing to respond to client's requests for information, failing to provide two clients' files upon request, failing to refund unearned advanced feeds, and failing to cooperate with BAPR investigation); and *In re Disciplinary Proceedings Against Peterson*, 164 Wis. 2d 755, 476 N.W.2d 572 (1991) (six-month suspension imposed on attorney with a prior public reprimand for failing to provide competent representation, failing to act with diligence, failing to keep client reasonably informed, failing to appear in court on an order to show cause, acting in presence of conflict of interest, failing to refund unused balance of advanced fee, and failing to cooperate with BAPR investigation).

misconduct. Throughout most of the time that he has held an active license to practice law in this state he has been unable to conform his conduct to Rules of Professional Conduct for Attorneys. His first discipline came just two years after his admission to the practice of law. Just a few years later he received two consecutive suspensions that totaled 15 months. It took him approximately 22 years, however, to successfully petition for the reinstatement of his license. Then, he again engaged in misconduct within approximately two years of his reinstatement. This pattern of misconduct calls for a more severe level of discipline than we have imposed in cases involving similar instances of misconduct. In addition, we generally follow a policy of progressive discipline, imposing more severe levels of discipline upon subsequent instances of misconduct, especially where there is a pattern of misconduct. *In re Disciplinary Proceedings Against Nussberger*, 2006 WI 111, ¶27, 296 Wis. 2d 47, 719 N.W.2d 501. This also supports imposing a suspension greater than six months in duration.

¶71     Also troubling are the referee's findings that Attorney Malloy has not accepted responsibility for his misconduct, much less demonstrated remorse for it, but has attempted to minimize his misconduct and to shift the blame onto others. This is especially worrisome because it indicates that Attorney Malloy is unlikely to reform his ways unless the seriousness of his failings is strongly impressed upon him.

¶72     Thus, given all of these factors, it is clear that a suspension substantially longer than a six-month suspension that we have imposed on other attorneys for similar misconduct is warranted in this case. We conclude that, under these circumstances, an 18-month suspension is necessary to protect the public and to impress upon Attorney Malloy that his failure to conform his conduct to the Rules of Professional Conduct for Attorneys will not be tolerated. That is an appropriate increase from the level of discipline we have imposed on similar misconduct without departing from the existing framework of precedent.

¶73     We next turn to the issue of restitution. It is clear from the record that Attorney Malloy has conceded that a $2,000.00 refund to B.Y. is required. Indeed, he sent such a refund to B.Y., but failed to ascertain where B.Y. was incarcerated and sent it to the wrong facility. He again promised to send a refund in that amount at the sanction hearing in this proceeding, but then failed to verify to the referee that he had followed through on his promise and had delivered the refund to B.Y. To ensure that B.Y. receives the refund, we will order that Attorney Malloy pay restitution to B.Y. in that

amount or that he provide the court with adequate documentary proof that he has already made the $2,000.00 payment and that B.Y. has received it.

¶74    Finally, we address the issue of costs. We see no reason in this case to depart from our general policy of imposing the costs of the disciplinary proceeding on a respondent attorney who is found to have committed professional misconduct. SCR 22.24(1m). Thus, we will require Attorney Malloy to pay the full costs of the proceeding in the amount of $8,362.30.

¶75    IT IS ORDERED that the license of Attorney Robert T. Malloy to practice law in Wisconsin is suspended for a period of 18 months, effective as of the date of this order.

¶76    IT IS FURTHER ORDERED that within 60 days of the date of this order, Attorney Robert T. Malloy shall pay restitution in the amount of $2,000.00 to B.Y. In the event that Attorney Malloy has already made a payment in this amount to B.Y., Attorney Malloy shall provide adequate documentary proof to this court within 60 days of the date of this order that he has caused the payment to be delivered to B.Y. and that B.Y. has received the payment.

¶77    IT IS FURTHER ORDERED that within 60 days of the date of this order, Attorney Robert T. Malloy shall pay to the Office of Lawyer Regulation the costs of this proceeding, which are $8,362.30.

¶78    IT IS FURTHER ORDERED that payment of restitution is to be completed prior to paying costs to the Office of Lawyer Regulation.

¶79    IT IS FURTHER ORDERED that, to the extent he has not already done so, Attorney Robert T. Malloy shall comply with the provisions of SCR 22.26 concerning the duties of an attorney whose license to practice law has been suspended.

¶80    IT IS FURTHER ORDERED that compliance with all conditions of this order is required for reinstatement. *See* SCR 22.29(4)(c).

¶81    JILL J. KAROFSKY, C.J., and SUSAN M. CRAWFORD, J., did not participate.